UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:   3:19-CR-187-TAV-HBG-1 |
| | ) | |
| DONALD LAMONT WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

This criminal case is before the Court on the government's Emergency Motion under 18 U.S.C. § 3145 to revoke the magistrate judge's release order [Doc. 14]. The government requests that the Court revoke the decision of United States Magistrate Judge Elizabeth A. Stafford to release defendant from custody pending trial. For the reasons discussed herein, the Court will **GRANT** the government's motion [Doc. 14] and **ORDER** defendant detained.

## I.     Background

The indictment charges defendant with conspiracy to distribute and possess with intent to distribute four hundred (400) grams or more of a mixture and substance containing fentanyl, a Schedule II controlled substance, and one hundred (100) grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B) (Count One) [Doc. 1].

Defendant was arrested on this charge in Detroit, Michigan, on November 1, 2019, and appeared before United States Magistrate Judge Elizabeth A. Stafford in the Eastern District of Michigan for an Initial Appearance and Arraignment [Doc. 26].

On November 6, 2019, the parties appeared before Judge Stafford for a detention hearing [Doc. 26]. The government sought to detain defendant pending trial, citing the presumption in favor of detention, the danger defendant poses to the community, and the risk defendant might flee or fail to appear [Doc. 232-5]. The government emphasized various facts about the conspiracy and defendant's involvement [*United States v. Williams*, 2:19-mj-30573, Doc. 6]. According to the affidavit the government cited, the alleged drug trafficking organization was referred to as the Donald Williams organization, defendant had a Tennessee driver's license listing his address as one of two (2) Knoxville apartments associated with the conspiracy, and two cars associated with the conspiracy were registered in defendant's name and listed the same Knoxville address [*Id.*]. Agents investigating the conspiracy executed search warrants at both apartments, finding bulk quantities of cash, almost an ounce of heroin, cutting agent, and digital scales at one (1) of the apartments [*Id.*]. Agents also executed warrants at two (2) storage rooms, and in the storage unit rented by Terrence Williams, apparently defendant's nephew, they found four (4) ounces of heroin, including two (2) ounces in a safe, two (2) plastic baggies wrapped in electrical tape, rubber bands consistent with wrapping bulk cash, and assorted ammunition; the other storage unit contained a digital scale in a safe [*Id.*]. When agents stopped one of the cars associated with the organization after it left one of the apartments, the agents found two (2)

2

grams of what they believed to be heroin; the agents had also witnessed the car's driver and/or passengers making drug sales the previous night [*Id.*]. The government also noted that a confidential informant who bought a small user's amount from the organization stated a car matching the description of defendant's Honda Accord approached him in a restaurant parking lot; other purchasers of drugs from the organization stated that defendant or one of the others in the organization sold them drugs, and some said defendant gave them his phone number and said he had two women who worked for him who sometimes sold [*Id.*].

In sum, the government argued that defendant poses a danger to the community because of his role in a conspiracy preying on victims of the opioid crisis and his history of unemployment [*Id.*]. It also contended that defendant's 1991 failure to appear and criminal history, including a drug delivery conviction and a second-degree murder conviction, demonstrate disrespect for the law and a likelihood that defendant will fail to appear in this case [*Id.*].

Defendant sought release pending trial, emphasizing that defendant does not pose a risk of flight because he has no passport, no history of traveling out of the country, lacks the means to flee, and is a lifelong Detroit resident with extensive connections to the area [*Id.*]. Defendant evidently owns a house in Detroit with his wife, who is willing to act as third-party custodian for her husband and who owns a beauty shop in the area, and defendant's brother, sister, and adult children live in the area [*Id.*]. Defendant also argued that he does not pose a danger because the bulk of allegations supporting the charged

conspiracy involve hand-to-hand sales by defendant's co-defendants, and because there is no indication the organization ever used violence [*Id.*]. Regarding his second-degree murder conviction, defendant explained that he was convicted of murdering someone involved in the killing of two of his children when defendant was only age twenty-two (2), and he emphasized that he was paroled from prison in 2008 and got off of parole in 2010 [*Id.*]. Defendant also stated that he was in a serious car accident in 2013, leading to spinal surgery and ankle surgery, and was pursuing a social security disability claim [*Id.*].

After hearing oral argument, the magistrate judge found that although the offense was serious, she believed home detention in Detroit could reasonable assure the community's safety, given that the conspiracy was alleged to involve non-violent, hand-to-hand sales in Knoxville [*Id.*]. She also found that the government had not presented evidence defendant would fail to appear or flee, discounting defendant's criminal history and unemployment and stating a GPS tether would ensure his appearance [*Id.*]. Accordingly, the magistrate judge found that the presumption in favor of detention was rebutted and ordered defendant released pending trial [*Id.*], staying her order until 4:00 p.m. on November 6, 2019, to allow this Court to consider a motion to revoke her release order [Doc. 21].

The government then filed the instant motion, requesting that the Court stay the release order until a hearing could be held in the Eastern District of Tennessee and that it ultimately revoke the release order [Doc. 14]. The Court addressed part of this motion in its November 6, 2019 order staying the release order and ordering the defendant detained

pending resolution of the instant motion [Doc. 21]. An Initial Appearance and Arraignment Hearing as to defendant was held before Magistrate Judge Debra C. Poplin on November 22, 2019 [Doc. 27]. The audio recording from the hearing indicates that Judge Poplin noted the matter of detention was pending before the district judge and did not make new findings regarding the propriety of detention. After a continuance [Doc. 46] and a substitution of counsel [Doc. 59], defendant moved on January 30, 3020, for a detention hearing [Doc. 61]. On February 5, 2020, the Court denied defendant's motion [Doc. 62], directing defendant to file a response to the government's emergency motion on or before February 20, 2020. Defendant filed his response on February 12, 2020 [Doc. 63]. The government has not filed a reply, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1. The motion is thus ripe for disposition.

## II.      Standard of Review

"If a person is ordered released by a magistrate judge, . . . the attorney for the Government may file with the [district court] a motion for revocation of the order . . . ." 18 U.S.C. § 3145(a)(1). Such a motion "shall be determined promptly." *Id.* The district court's review of the magistrate judge's release or detention order is *de novo*. *United States v. Blair*, No. 3:15-cr-56, 2015 WL 3486026, at *1 (E.D. Tenn. June 2, 2015) (citations omitted); *see also United States v. Marcum*, 953 F. Supp. 877, 880 (W.D. Tenn. July 17, 2013), *aff'd* No. 13-6008 (6th Cir. Nov. 1, 2013). The district court may rely both on the evidence and offers of proof presented at the original detention hearing before the

magistrate judge, as well as additional evidence and offers of proof at its discretion.[1] *United States v. Zapien*, No. 3:14-cr-37, 2014 WL 1028435, at *2 (M.D. Tenn. Mar. 17, 2014); *see also United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000) ("[M]eaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge.").

Title 18, § 3142 of the United States Code provides the framework for the district court's analysis as to whether release pending trial is proper. *United States v. Webb*, 238 F.3d 426, at *2 (6th Cir. 2000) (table opinion). The ultimate touchstone of this analysis is "whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." § 3142(g). The key considerations in making this determination include, but are not limited to: (1) the nature and circumstances of the offense charged, including whether it is a crime involving a controlled substance; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, e.g., his or her character, mental and physical condition, family and community ties, financial resources, criminal history, and substance-abuse history; and (4) the nature and seriousness of the danger posed to the community by the defendant's potential release. *Id.*

---

[1] The Court notes that defendant has filed a motion [Doc. 68] requesting a hearing on the government's emergency motion. However, defendant has already received a detention hearing, and the Court finds the record from the original detention hearing, as well as the evidence presented in the submitted briefs, sufficient under the applicable standard to decide the issue.

6

Section 3142(e)(3)(A) establishes a rebuttable presumption in favor of detention where there is probable cause to believe that the defendant committed certain offenses: "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 *et seq.*) . . . ." 18 U.S.C. § 3142(e)(3)(A).

## III.    Analysis

First, the presumption in favor of detention established in § 3142(e)(3)(A) applies here. As stated, a grand jury has charged defendant with violating 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B) by conspiring to distribute and possess with the intent to distribute fentanyl and heroin [Doc. 1]. The maximum term of imprisonment for each of these drug offenses exceeds ten (10) years. 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(B), 846. Thus, probable cause exists to believe that defendant has committed an offense described in 18 U.S.C. § 3142(e)(3)(A), establishing a presumption that defendant should be detained pending trial. With this presumption in mind, the Court turns to the factors set forth in § 3142(g).

### A.    The Nature and Circumstances of the Offense

The government argues that the nature-and-circumstances-of-the-offense factor favors detention [Doc. 14 p. 2–3]. The government describes defendant as the lead

7

defendant in a large-scale fentanyl and heroin conspiracy and states that he was "witnessed conducting numerous drug transactions on a daily basis in and around" Knoxville [*Id.*]. According to the government, the "evidence against Defendant Williams includes multiple controlled buys of suspected heroin and fentanyl, physical and video surveillance of numerous distributions of heroin, and witness statements" [*Id.*]. The Court has already discussed the allegations supporting detention the government presented at defendant's detention hearing before the magistrate judge. *See supra* p. 2–4.

Defendant, on the other hand, argues that this factor weighs in favor of release [Doc. 63 p. 3]. Defendant says the government misrepresented certain facts in its emergency motion, stating that the search warrants presented at the detention hearing allege that defendant was "only seen a few times in Knoxville . . . making low-level street deals with drug users" during the alleged conspiracy period [*Id.*]. Defendant also highlights the absence of allegations that the alleged drug trafficking organization engaged in violence and notes that no firearms were seized from defendant or either of the searched Knoxville apartments [*Id.*].

First, the Court agrees with the government that the offenses involve dangerous narcotics and are thus serious offenses. The Court does not find that the non-violent nature of the alleged organization's trafficking activities mitigates the dangerousness and seriousness of defendant's alleged offenses and the organization's alleged actions. As the government pointed out at defendant's detention hearing [2:19-mj-30573, Doc. 6], violence would not help an organization servicing the addictions of individual drug users

8

with heroin and fentanyl. And, addiction to opioids, including heroin and fentanyl, represents a grave menace to individuals and society in East Tennessee.

Second, even accepting that defendant "was only seen a few times in Knoxville . . . making low-level street deals with drug users" [Doc. 63 p. 3], the allegations discussed at the detention hearing indicate that defendant's role in the conspiracy was significant. According to the government, defendant was the organization's leader, the organization was known as the "Donald Williams organization," defendant had a Tennessee driver's license listing the address of one of the apartments associated with the conspiracy, the two cars associated with the conspiracy were registered in his name and listed the same Knoxville apartment, and defendant told more than one buyer that he had two women working for him who also sold drugs [2:19-mj-30573, Doc. 6]. If defendant was the organization's leader and financial sponsor to at least some extent, then the length of his stays in Tennessee and the frequency of his participation in hand-to-hand sales are less significant than the gravity of the alleged organization's overall activities. Given the seriousness and dangerousness of the offense, the Court finds that this factor weighs against releasing defendant pending trial.

**B.     The Weight of Evidence Against the Defendant**

The weight of the evidence factor "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)]. Rather, it "deals with the factors to be considered in determining whether there are conditions which will assure the appearance

9

of the accused and safety of the community," namely whether defendant poses a danger to the community and is a flight risk. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).

The Court agrees with the magistrate judge's conclusion that defendant does not appear to pose a flight risk. As defendant states in his response to the emergency motion [Doc. 63 p. 2], he proffered evidence from the pre-trial services report that he has never travelled outside the United States, does not have a passport, and has substantial contacts in Detroit. The Court also notes that defendant's wife has agreed to be a third-party custodian for him and assure his appearance in Court. And, similarly to the magistrate judge, the Court finds that defendant's failure to appear conviction is only minimally relevant to whether he will appear in this Court, given that the conviction dates from 1991.

However, the Court finds that the allegations presented at the detention hearing support a finding that defendant poses a danger to the community. Defendant is alleged to have led and participated in a conspiracy to distribute heroin and fentanyl, two extremely dangerous substances, to individual users in the Knoxville area. While defendant argues that nothing indicates the alleged organization acted violently, drug trafficking is inherently dangerous, regardless of whether violence was involved. *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[O]ur Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence."). And, the quantities involved in the charged conspiracy are significant: four hundred (400) grams or more of a mixture and substance

10

containing fentanyl and one hundred (100) grams or more of a mixture and substance containing a detectable amount of heroin [Doc. 1]. Although defendant appears to argue that restricting him to his home will prevent him from engaging in the kind of hand-to-hand sales charged in the warrants, the allegation that defendant led the alleged conspiracy from Michigan, at least during parts of the conspiracy, underlines that restricting defendant to his home in Detroit will not adequately assure the community's safety from his criminal activities.

Having considered the arguments of the parties, the Court finds that while defendant presents a relatively low risk of flight, he does pose a danger to the community. Accordingly, this factor weighs in favor of detention.

### C. The History and Characteristics of the Defendant

The Court finds defendant's criminal history also weighs minimally in favor of detention. The government has emphasized defendant's 1991 second-degree murder conviction, delivery conviction for controlled substances, and 1991 conviction for failing to appear [Doc. 14; 2:19-mj-30573, Doc. 6]. As defendant notes, the magistrate judge agreed with defendant that he received a lesser sentence than is usual for a second-degree murder conviction and recognized that he was paroled in 2008 and discharged from parole in 2010; defendant also highlights the lack of allegations of violence in his record since his release from prison [Doc. 14; 2:19-mj-30573, Doc. 6]. Although the Court recognizes that defendant's sentence and parole history indicate mitigating circumstances may have surrounded defendant's second-degree murder conviction, the Court finds that conviction

of a serious crime of violence, in combination with defendant's previous drug-related conviction, weighs slightly in favor of detention.

Moreover, the Court finds defendant's history of unemployment weighs in favor of detention. At the detention hearing, the government highlighted defendant's admission that he has been unemployed for six (6) years, evidently since he was involved in a serious car accident in 2013, which led to spinal surgery and ankle surgery [2:19-mj-30573, Doc. 6]. Defendant told his attorney that he is pursuing a Social Security disability claim and is unable to lift heavy objects; he also communicated that his wife owns a beauty shop and supports him [*Id.*]. The magistrate judge gave defendant's unemployment minimal weight in light of these circumstances, especially the fact of defendant's wife's employment [*Id.*]. However, the allegations against defendant, and his wife's admissions at the detention hearing, indicate that defendant's medical condition did not prevent him from traveling on multiple occasions to Tennessee, and without any further evidence that defendant is disabled or any evidence that he pursued some kind of productive activity during the six-year period preceding the alleged conspiracy, the Court finds that defendant's unemployment weighs against release.

By contrast, defendant's family and community ties weigh in favor of release. His brother, sister, and adult children reside in Detroit, where he has resided for most of his life. Moreover, defendant's wife, with whom he lives, has expressed her willingness to act as a third-party custodian [2:19-mj-30573, Doc. 6]. Although these ties to Detroit weigh heavily toward release, the Court finds it troubling that defendant and his wife told pretrial

12

services that he lives at a residence in Detroit when defendant rented an apartment in Knoxville, traveled to Tennessee multiple time, and was thinking about moving to Tennessee [*Id.*].

Taken altogether, defendant's history and characteristics weigh in favor of detention.

### D.     The Nature and Seriousness of the Danger to the Community

As discussed above, the Court finds that the defendant's alleged conduct in this case establishes that he poses a danger to the community. His role in leading a conspiracy distributing heroin and fentanyl to feed the addiction of individual users in the Knoxville area indicates both the willingness to commit future harms and the scale of the threat similar conduct poses to the community. While the hand-to-hand sales which defendant is charged with committing may not have involved violence, the absence of violence does not diminish the impact of heroin and fentanyl drug trafficking in terms of contributing to opioid addiction and all its attendant harms. This last factor therefore weighs in favor of detention.

## IV.    Conclusion

In sum, after an independent, *de novo* review, the Court finds that all four § 3142(g) factors favor detention, some more heavily than others. The dangerous nature of the offense and the danger to the community posed by defendant, as well as defendant's criminal history and unemployment history, bolster the presumption in favor of detention, and defendant's low flight risk and strong ties to Detroit are insufficient to rebut that

presumption. Accordingly, the Court will **GRANT** the government's motion [Doc. 14].

The magistrate judge's order releasing defendant pending trial is **REVOKED** [Doc. 26].

Defendant will **REMAIN** in federal custody pending trial. Defendant's motion to set the

matter for a hearing [Doc. 68] is **DENIED as moot**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

14